IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| CHANDA CHAPMAN, | ) |
| Plaintiff, | ) ) ) ) ) |
| v. | ) ) CIVIL ACTION NO. 5:22-CV-146 (MTT) |
| SOUTHERN INSURANCE UNDERWRITERS, INC., *et al.*, | ) ) ) ) ) |
| Defendants. | ) ) |

__ORDER__

On April 8, 2022, Defendants Southern Insurance Underwriters Inc. ("Southern") and Great Lakes Southern Insurance, SE ("Great Lakes") removed this case from Bibb County Superior Court based on diversity jurisdiction.  Doc. 1.  Plaintiff Chanda Chapman then moved to remand because Southern, like Chapman, is a Georgia resident.  Doc. 9.  However, Chapman fraudulently joined Southern, and thus Chapman's motion to remand (Doc. 9) is **DENIED**.

I. BACKGROUND

Chapman alleges that on November 7, 2019, Southern, acting on behalf of Great Lakes, "issued" her a homeowners insurance policy.  Doc. 1-4 at 4.  Chapman specifically alleges that Great Lakes is an insurance company, but she does not allege that Southern is an insurance company.  *Id*. at 3.  The policy, which Chapman attached to her complaint, was a "surplus lines policy," and the policy explains in detail what that means.  Doc. 1-4 at 7, 10.  A surplus lines policy is one that is "placed with an insurer

that is not licensed (or admitted) in this state, but is nonetheless eligible to provide insurance on property or liability insurance protection to citizens of this state through specially licensed agents or brokers known as surplus lines brokers." *Id.* (internal quotation marks omitted).  Thus, as it clearly states, the policy was written by an out of state insurer and was procured by a specially licensed surplus lines broker.  *Id*.

While the policy was in force, Chapman experienced a loss to her personal property because of water damage.  *Id*. at 4.  Chapman alleges that she "requested and obtained proper proof of loss forms and timely filed her claim on two occasions."  *Id*.  In her notice of loss, she identified Great Lakes alone as the insurer under the policy.  Doc. 1-3.  Chapman's damages were not considered a covered loss, and her claim was denied.  Doc. 5 at 4.  Chapman thereafter sued the defendants, alleging claims for breach of contract and bad faith.  Doc. 1-4 at 3-6.  Thus, but for Chapman's joinder of Southern, this is a straightforward action on an insurance policy.

The defendants argue that Southern was fraudulently joined and thus its Georgia residency should not be considered for purposes of diversity jurisdiction.  Doc. 1.  Specifically, the defendants contend that Great Lakes is the sole insurer under the policy and that there is no contract between Southern and Chapman.  *Id*. ¶ 15.  Rather, Southern is, as the policy makes clear, a surplus lines broker for Great Lakes, and it issued Chapman a Great Lakes policy in that role.  Doc. 12 at 3.  Thus, the defendants argue that Southern cannot possibly be liable for breach of contract because it was not a party to the contract and that Southern cannot be liable for bad faith because it was not Chapman's insurer.  *See J. Smith Lanier & Co. v. Southeastern Forge, Inc.*, 280 Ga.

508, 510, 630 S.E.2d 404, 407 (2006) (stating bad faith claims "are available only as between insureds and their insurers").

## II. STANDARD

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). To prove fraudulent joinder, the defendants must show that either "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). The burden of establishing fraudulent joinder is a heavy one, and "[i]f there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court."[1] *Triggs*, 154 F.3d at 1287 (internal quotation marks and citation omitted). "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Pacheco de Perez v. AT&T*, 139 F.3d 1368, 1380 (11th Cir. 1998) (citation omitted). The Court "must evaluate factual allegations in the

---

[1] "To determine whether it is possible that a state court would find that the complaint states a cause of action, we must necessarily look to the pleading standards applicable in state court, not the plausibility pleading standards prevailing in federal court." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1334 (11th Cir. 2011). Here, under Georgia's notice pleading standard, Chapman need only give "fair notice [of the claim] and state[] the elements of the claim plainly and succinctly[.]" *Id*. (quoting *Carley v. Lewis*, 221 Ga. App. 540, 542, 472 S.E.2d 109, 110-11 (1996)). A Georgia state court may, however, "consider exhibits attached to and incorporated into the complaint in reviewing a motion to dismiss" and "to the extent that there is any discrepancy between the allegations in the complaint and the exhibits attached to it, the exhibits control." *Love v. Fulton Cnty. Board of Tax Assessors*, 348 Ga. App. 309, 310, 821 S.E.2d 575, 579 (2018) (internal quotation marks omitted).

light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor.  *Id*.  However, "there must be some question of fact before the district court can resolve that fact in the plaintiff's favor."  *Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005) (stating that a district court cannot resolve a fact in the plaintiff's favor when the defendants produced sworn statements that were not rebutted by the plaintiff).

## III. DISCUSSION

"The elements of a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken."  *SAWS at Seven Hills, LLC v. Forestar Realty, Inc.*, 342 Ga. App. 780, 784, 805 S.E.2d 270, 274 (2017).  "As a general rule, one not in privity of contract with another lacks standing to assert any claims arising from violations of the contract."  *Dominic v. Euorcar Classics*, 310 Ga. App. 825, 828, 714 S.E.2d 388, 391 (2011); O.C.G.A. § 9-2-20.  Pursuant to O.C.G.A. § 33-4-6, to recover on a claim for bad faith, "the insured must prove: (1) that the claim is covered under the policy, (2) that a demand for payment was made against the insurer within 60 days prior to filing suit, and (3) that the insurer's failure to pay was motivated by bad faith."  *BayRock Mortg. Corp. v. Chicago Title Ins. Co.*, 286 Ga. App. 18, 19, 648 S.E.2d 433, 435 (2007) (citing O.C.G.A. § 33-4-6).  In short, if Southern was not a party to the contract, a state court could not determine that Chapman has stated a breach of contract or bad faith claim against it.

Chapman *now* claims Southern, along with Great Lakes, is possibly her insurer.  But that is not what she alleged in her complaint.  Rather, she alleged that Southern

"issued" the policy while "acting for and on behalf of Defendant Great Lakes," and she alleged Great Lakes, but not Southern, is an "insurance company."  Doc. 1-4 at 3-4.  And when she gave notice of her loss, she identified Great Lakes as her insurer.  Doc. 1-3.

Lacking allegations in her complaint suggesting that Southern is an insurer, Chapman argues that the policy justifies Southern's joinder.  She argues the policy is not a "model of clarity" and thus there is "a colorable claim … that Defendant Southern is a party to the contract."  Doc. 9-11 at 6.  But in her motion, Chapman fails to acknowledge the undisputed fact that the policy is a surplus lines policy and that Southern, in accordance with Georgia law, acted as a surplus lines broker when it issued the policy on behalf of Great Lakes.

The declarations page of the policy states: "This contract is registered and delivered as a Surplus line coverage under the Surplus Line Insurance Law, O.C.G.A. Chapter 33-5."  Doc. 1-4 at 7.  The policy then explains precisely what a surplus lines policy is.

> Your broker has placed the insurance you requested in the "surplus lines market" with one or more surplus lines insurers.
> …
>
> A surplus lines policy is a policy placed with an insurer that is not licensed (or 'admitted') in this state, but is nonetheless eligible to provide insurance on property … through specially licensed agents or brokers known as surplus lines brokers.
> …
>
> Surplus lines transactions are regulated by state laws that require that surplus lines policies be procured only by specially licensed brokers.  These are called surplus lines brokers and they are authorized to transact business with certain unlicensed insurers that meet financial and other eligibility standards set by the state.  These insurers are known as surplus lines insurers.

*Id*. at 10.  In short, the policy makes clear that it is a surplus lines policy and that Southern procured the policy as a surplus lines broker.

And nothing in the policy suggests that Chapman has a "colorable claim" against Southern.[2]  Great Lakes' name is at the top of the policy's declarations page.  *Id*. at 7.  While Southern's name appears below Great Lakes', that is because Southern, as explained, acted as a surplus lines broker to procure the Great Lakes policy for Chapman.  *Id*.  And when referring to the insurer, the policy uses "the Company" and distinguishes Southern from the company.  For example, the policy requires the insurer to "give immediate advice thereof to the Company through Southern Insurance Underwriters, Inc."  *Id*. at 9.  And in the definitions section, the policy provides that plural pronouns "refer to the Company providing this insurance."  *Id*. at 25.  In short, no reasonable reading of the policy allows the construction that there are two insurers and that Southern is one of the two.

Chapman places great emphasis on the fact that "underwriters" appears in certain parts of the policy.  True, but the conclusion she draws from that—that "underwriters" refers to Southern—is wrong.  Certain clauses and endorsements in the policy were "[a]pproved by Lloyd's Underwriters Fire and Non-Marine Association."  *Id*. at 9.  It is in those clauses and endorsements that "underwriters" appears.  The policy identifies Great Lakes as a London-based insurer.  Doc. 1-4 at 14, 16.  Clearly, Great Lakes is associated with Lloyd's and that explains Lloyd's' involvement.  That can be

---

[2] Chapman does not allege or argue that Southern is liable as a surplus lines broker.  Nor could she.  *See Looking Good Properties, LLC v. Johnson & Johnson, Inc.*, 2013 WL 12122685, at *3 (S.D. Ga. June 14, 2013) (holding that a surplus lines broker was not liable for breach of contract or bad faith based on a breached insurance policy that it procured).

inferred from the record, but the Court does not rely on that inference to reach its conclusion that Southern was fraudulently joined. Rather, the point taken is that "underwriters" refers to Lloyd's Underwriters, not Southern. When referring to Southern, the policy uses "Southern Insurance Underwriters, Inc." *Id*. at 9. Thus, there is no basis for Chapman's argument that underwriters could somehow be understood to refer to Southern Underwriters.

Southern confirms all this with sworn evidence. Southern's Senior Vice President avers in an affidavit that because Great Lakes is a surplus lines insurer, Georgia law requires that such a policy be "procured through a licensed surplus lines broker, such as [Southern]." Docs. 12-1 ¶ 8; 12 at 3; *see also* O.C.G.A. § 33-5-21(a)(1) (requiring that surplus line insurance "be procured through a licensed surplus line broker"). The affidavit further states that Southern does not assume any risks under the policy and that the Georgia Office of Insurance and Safety Fire Commissioner website lists Southern as an agency, not an insurer. Doc. 12-1 ¶¶ 3, 5.

Chapman too has submitted evidence—her affidavit and the affidavit of her public insurance adjuster. Chapman says she *believed* Southern was the insurer and that her insurance agent never told her otherwise. Doc. 13-1 ¶ 2. Similarly, Chapman's adjuster is of the *opinion* that Southern was the insurer. Doc. 13-2 ¶ 3. He further states that he submitted his invoice to Southern after he reviewed Chapman's claim.[3] *Id*. Even if Chapman's *belief* was relevant and even if her adjuster's *opinion* was admissible, beliefs and opinions cannot alter the terms of the policy and Georgia law regarding surplus lines policies, and they do not amend the allegations of the complaint.

---

[3] Again, for this point, Southern's Senior Vice President avers that "[c]laims are reported to Great Lakes through [Southern], as Great Lakes' surplus lines broker." Doc. 12-1 ¶ 4.

*Great Lakes Ins. SE v. Queen*, 2017 WL 343637 (M.D. Ga. Jan. 23, 2017), which Chapman cites, proves the defendants' point.  There, the Court granted *Great Lakes*' motion for summary judgment on its declaratory relief claim.  *Id*. at *1.  In *Queen*, the Court explicitly stated that Great Lakes was the insurer, and that "Southern Insurance Underwriters, Inc. acts as managing general agent for Great Lakes and issues policies on behalf of Great Lakes pursuant to certain underwriting guidelines."  *Id*. at *2.  Great Lakes stated in *Queen* that but for the insured's misrepresentation, "Southern Insurance would have charged a different premium, offered different coverage, *or written coverage under a different insurance carrier*."  *Id*. (quotations omitted and emphasis added). Chapman argues that these sorts of actions "sound like things that an insurer does," but nowhere in *Queen* did the Court refer to Southern as an insurer.  Doc. 13 at 3; *id*. at *2-3.  Rather, Southern performed certain functions on behalf of the insurer, Great Lakes, just as it did here.  And the policy in *Queen* was a surplus lines policy, and Southern procured the Great Lakes policy for the insured pursuant to O.C.G.A. § 33-5-21.  No. 3:15-cv-123-CL (M.D. Ga.), Doc. 10-10 at 2.  That is why Southern does things that, to Chapman, "sound like things that an insurer does."  That does not make Southern the insurer.

While it is true, as Chapman argues, that under Georgia pleading standards conclusory statements *might* sufficiently state a cause of action, Chapman never alleged in her complaint that Southern was an insurer.  And even if she had so alleged in her complaint, the policy she attached to her complaint would conclusively refute that allegation.  *Love v. Fulton Cnty. Board of Tax Assessors*, 348 Ga. App. 309, 310, 821 S.E.2d 575, 579 (2018) ("To the extent that there is any discrepancy between the

allegations in the complaint and the exhibits attached to it, the exhibits control."). Nor, if Chapman had alleged Southern was an insurer, could she merely point to those allegations in response to sworn statements confirming Southern's role. *See Legg*, 428 F.3d at 1323 (stating that a district court cannot resolve a fact in the plaintiff's favor when the defendants produced sworn statements that were not rebutted by the plaintiff).

## IV. CONCLUSION

Because Southern has been fraudulently joined and its residency may be ignored, this Court properly has jurisdiction pursuant to 28 U.S.C. § 1332. Accordingly, Chapman's motion to remand (Doc. 9) is **DENIED**. Southern is **DISMISSED** without prejudice from this case based on its fraudulent joinder, and the defendants' motion to dismiss Southern (Doc. 4) is **DENIED** as moot.

**SO ORDERED**, this 25th day of August, 2022.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT